Filed 7/5/16  Earle & Reimer APC v. Klimek CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SIXTH APPELLATE DISTRICT

| | |
|---|---|
| EARLE & REIMER APC et al., <br><br> Plaintiffs, Cross-defendants and Respondents, <br><br> v. <br><br> JOHN KLIMEK, <br><br> Defendant, Cross-complainant and Appellant. | H041037 <br> (Santa Clara County <br> Super. Ct. No. CV230539) |

Defendant and appellant John Klimek appeals from numerous discovery sanctions, which at trial resulted in a confessed judgment in favor of plaintiffs.  Klimek was a former client of the law firm Earle & Reimer APC ("Earle & Reimer") and Pauline Reimer ("Reimer"), one of the attorneys and principals of the firm (together "Plaintiffs").  Plaintiffs sought $32,480 in unpaid fees after Klimek terminated Reimer's services in a complex marital dissolution.  After Klimek prevailed in a fee arbitration, Plaintiffs rejected the arbitration award and sued Klimek for breach of contract, account stated, and common counts for quantum meruit.  Klimek cross-complained against Earle & Reimer, Reimer, and Janice Earle (another attorney and principal of the firm) alleging legal malpractice and related claims.

Earle & Reimer served Klimek with discovery requests pertaining to the cross-complaint and the affirmative defenses, and eventually moved to compel further

responses and for sanctions. Klimek filed no opposition to the motion to compel and his counsel did not appear at the hearing. The court granted the motion to compel. Following an initial order to compel that included monetary sanctions, the trial court separately granted two more motions to compel, each with additional monetary sanctions.

Klimek failed to serve further responses in compliance with the first order to compel, so Plaintiffs moved for an order to impose terminating, issue, evidence, and monetary sanctions. Once again, Klimek failed to file an opposition. Instead, two days before the hearing, Klimek's counsel filed a declaration stating that he had served further responses, satisfying "all of the outstanding discovery." But counsel did not attach a copy of the further responses for the trial court. After a hearing, the trial court ordered issue and evidence sanctions, monetary sanctions, and terminating sanctions dismissing Klimek's cross-complaint and striking certain affirmative defenses ("sanctions order"). The court also suggested that Klimek's counsel could "go by the book" to seek relief from the sanctions order.

The case continued to trial approximately four months later. Ten days before trial, Klimek's counsel applied ex parte to shorten time on an intended motion to vacate or continue the trial date. He had intended to file a motion for mandatory relief from the sanctions order pursuant to Code of Civil Procedure section 473, subdivision (b)[1] ("motion for relief"). The trial court denied the ex parte application, citing delay and a failure to show good cause. Klimek tried two more times to have the motion for relief heard before trial, but the trial court denied the additional requests.

At trial, Plaintiffs moved in limine, based on the sanctions order, to preclude Klimek from introducing certain evidence or challenging Plaintiffs' evidence. The trial court ruled in Plaintiffs' favor. Klimek's counsel then conceded that in light of the trial court's ruling on the motion in limine, there was no basis to move forward with trial and

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

agreed to a confessed judgment against Klimek in the amount of attorney's fees claimed. After entry of judgment, Klimek filed his motion for relief. The trial court denied the motion for relief on the ground that section 473, subdivision (b)'s mandatory relief provision did not apply to the sanctions order.

On appeal, Klimek challenges the following rulings: (1) the granting of terminating, issue, and evidence sanctions; (2) the denial of the motion to continue the trial or to advance the hearing on the motion for relief; (3) the application of the sanctions order to preclude the introduction of evidence at trial in defense of Plaintiffs' claims; and (4) the denial of the motion for relief. For the reasons stated herein, we will affirm the judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. ACTION FOR LEGAL FEES

Plaintiffs represented Klimek in a complex marital dissolution until January 2011, when Klimek terminated Reimer's services and engaged other counsel. In 2012, Klimek was awarded more than $200,000 in a fee arbitration against Plaintiffs in a dispute over unpaid attorney's fees. Plaintiffs rejected the arbitration award and filed this action for trial de novo. The complaint alleged $32,480 in unpaid fees. Klimek raised affirmative defenses in answer to the complaint. Klimek also cross-complained against Plaintiffs and Janice Earle for legal malpractice and breach of fiduciary duty based on alleged overbilling. Earle was never served and did not appear in the action.

Earle & Reimer served Klimek on March 15, 2013, with a first set of 24 special interrogatories composed primarily of contention interrogatories that asked Klimek to identify any factual support for the affirmative defenses and allegations in his cross-complaint. Klimek responded to each interrogatory by stating, "the answer may be derived or ascertained from [Klimek]'s client file and, . . . submissions" in the arbitration action, "all of which are already in the possession of the propounding party." In a meet and confer letter dated May 13, 2013, Plaintiffs argued that Klimek's responses were

3

nonresponsive and noncompliant and asked for further answers by May 20, 2013. The letter was sent to only one of Klimek's two attorneys, who was no longer handling the matter. As a result, Klimek's counsel never responded to the meet and confer letter. On June 4, 2013, Earle & Reimer filed a motion to compel further responses to the special interrogatories. The motion included a request for sanctions.

Klimek did not file an opposition to the motion to compel, and the trial court denied his counsel's ex parte request three days before the hearing to continue the hearing date. On August 16, 2013, the trial court granted the motion to compel and ordered Klimek to provide further responses within 20 days, explaining that the " 'see my files' type of response [was] vague and improperly evasive" in the context of contention interrogatories. The court also sanctioned Klimek and his counsel $2,760.

Earle & Reimer had also served its first set of requests for production of documents. Klimek failed to respond to the document request, so Earle & Reimer filed another motion to compel, which Klimek did not oppose. On October 9, 2013, the trial court granted the second motion to compel and ordered Klimek to respond to the document requests within 20 days and to pay an additional $2,535 in monetary sanctions. On February 7, 2014, the trial court issued a third order to compel discovery responses and to pay $1,860 in monetary sanctions after Klimek failed to respond to Plaintiffs' service of additional discovery requests (set one of form interrogatories).

## B. SANCTIONS FOR NONCOMPLIANCE WITH PRIOR COURT ORDER

Klimek did not comply with the court's deadline for further responses to Earle & Reimer's first set of special interrogatories. On September 10, 2013, Klimek's counsel wrote to Plaintiffs' counsel and asked for additional time to respond. On September 18, 2013, Plaintiffs' counsel wrote to remind Klimek's counsel that the responses and sanctions payment were past due; they received no response.

On October 24, 2013, Earle & Reimer served a motion for sanctions for failure to obey a prior court order. The motion sought terminating sanctions to dismiss Klimek's

4

cross-complaint and to strike the third and fifth affirmative defenses of Klimek's answer. The motion, in addition, or alternatively, sought the following issue sanctions on behalf of Earle & Reimer, and any of its principals, agents or employees, with respect to Klimek: (1) all billing was fair and reasonable; (2) there was no malpractice, negligence, or breach of duty of care; (3) there was no breach of fiduciary duty; (4) Klimek had not sustained any damages as a result of Plaintiffs' billing or performance of services; and (5) Klimek had not sustained any special damages. It also sought evidence sanctions to prohibit Klimek from introducing into evidence any facts against Earle & Reimer, and any of its principals, agents or employees relating to: (1) any alleged negligence, breach of duty of care or malpractice; (2) any alleged billing impropriety, excessive billing or overbilling; (3) any alleged breach of fiduciary duty; and (4) any damages allegedly sustained by Klimek. The motion also sought monetary sanctions.

Klimek did not file an opposition to the motion for sanctions. Instead, two days before the hearing, which was set for November 22, 2013, Klimek's counsel filed a "declaration of compliance" stating that he was serving further responses to the special interrogatories, as well as all documents in his possession, in full compliance with all discovery. Counsel explained the reasons for his delay in providing the responses ordered by the court. He argued he "did what I could to comply with the 20-day requirement and plaintiff was, quite frankly, unreasonable in refusing to work with me or even communicate with me about the additional time that I needed." Klimek's counsel also argued that lesser sanctions were appropriate: "Given that all outstanding discovery has been fully complied with, under the lesser sanctions first standard, evidence, issue, and terminating sanctions would not be appropriate given that the point of discovery sanctions is to obtain compliance with discovery and not provide a party with more than what the discovery responses would have given them."

The trial court issued a tentative ruling stating its intent to grant the motion for terminating sanctions. The tentative ruling included several questions and issues for the

5

hearing, including whether Klimek's further responses to the special interrogatories—though not provided to the court—rendered the matter "moot" under *Sinaiko Healthcare Consulting, Inc. v. Pacific Healthcare Consultants* (2007) 148 Cal.App.4th 390, 408-409. The tentative ruling also noted that Klimek made no representation that the previously ordered sanctions had been paid, or would be paid, and had not filed a motion for reconsideration of any prior order.

At the hearing on November 22, Klimek opposed the sanctions motion. Klimek's counsel argued that the tentative ruling he had obtained did not list any questions or issues, and the court therefore must have posted a second version of the tentative ruling. The court looked at counsel's printout of the tentative ruling and explained that counsel was missing the second page of what had been posted. The parties then argued several issues, including Klimek's failure to file an opposition, whether the further responses (served two days earlier) were in substantial compliance with the court's prior orders, and whether Plaintiffs' counsel had been non-communicative regarding counsel's request for additional time to respond.

After the hearing, the court granted the sanctions motion and signed an order prepared by Plaintiffs' counsel. That order included the handwritten phrase "as to both plaintiffs" in several places to indicate that the order expressly applied to both Earle & Reimer and to Pauline Reimer as a separate plaintiff. The court acknowledged this handwritten change, stating: "I see the interlineations that you made, and I will initial those, or I shouldn't say interlineations, the additions." The trial court then directed Klimek's counsel, "If you want relief from [the sanctions order], . . . you can go by the book and do that. . . . [¶] . . . And you may want to talk to [Plaintiffs' counsel] about working out a possible arrangement to set this aside and comply with the prior orders to the letter[,] including the payment of sanctions . . . . "

6

## C. TRIAL PROCEEDINGS

Trial was set without objection for March 17, 2014. On March 7, Klimek applied ex parte to the discovery department for an order to shorten time for a motion to vacate or continue the trial date. Counsel declared the action would not be ready for trial because he would be "filing a motion for relief from the discovery order under the mandatory provisions of CCP § 473(b)." Counsel had secured a hearing date of April 18 for the motion for relief.

The discovery judge denied the ex parte application, finding "no good cause" and "too much delay." Klimek's counsel made a second ex parte application on March 11 in the department where the motion for relief would be heard, asking the court to shorten the time to file his motion for relief so it could be heard before the trial date. That second judge also denied the application, finding no good cause shown for ex parte relief.

On March 17, 2014, the case proceeded to trial before a third judge. Klimek once again filed a motion for continuance of the trial. Plaintiffs, on the other hand, moved in limine to exclude Klimek from offering evidence to support the theories set forth in his trial brief and in his pretrial submissions on the ground that his proposed defenses would violate the November 22 sanctions order. The court denied the motion for continuance. On the motion in limine, Plaintiffs argued that the findings established by the sanctions order effectively precluded Klimek from offering evidence to contest the reasonableness or propriety of Plaintiffs' fees. Klimek responded that the sanctions order did not strike his answer to the complaint and did not preclude him from asserting a defense by negating Plaintiffs' evidence.

The trial court found that the sanctions order prevented Klimek from disputing the validity of the attorney's fee agreement or billing: "I have read [the judge's] ruling. It does appear to me as if the sanctions that he imposed, and particularly the evidentiary sanctions prohibiting the introduction of evidence in a listing of a variety of things, controls the case." The court remarked that five months had passed since the sanctions

order[2] and Klimek had taken no steps to seek reconsideration of the order or to set the order aside, despite the judge's suggestion to do so. Given that "[t]he final ruling imposed very significant sanctions in this case with no challenge to them up to the present time," the court explained it would grant Plaintiffs' motion in limine and enforce the sanctions order "in its entirety." The trial court thus found "the defense is not going to be able to put on any evidence. . . . [¶] . . .You're prohibited from anything regarding billing impropriety, excessive billing, or overbilling." The court also rejected Klimek's contention that the evidentiary and issue sanctions did not impact a defense to the account stated cause of action: "If you can't put on any evidence, they're going to stand up and say: Here is the contract. Here is my bill. I don't think you can put on any evidence to counter that."

In light of the trial court's ruling on the motion in limine, Klimek agreed to confess judgment in the amount of the attorney's fees claimed. The trial court entered judgment for $32,480 against Klimek on March 24, 2014.

### D. MOTION FOR RELIEF FROM SANCTIONS ORDER

On March 26, 2014, Klimek moved to set aside the sanctions order under the mandatory provision of section 473, subdivision (b). Klimek's moving papers explained that the failure to respond to discovery and the resulting sanctions order were "solely the fault of" counsel. Counsel provided a declaration in support of the motion stating that any and all delays and failings in the conduct of discovery were his fault and not the fault of his client. Plaintiffs opposed the motion for relief with detailed attorney and client declarations and case history. Among many issues, Plaintiffs disputed the applicability of the mandatory provision of section 473, subdivision (b). Klimek filed a reply brief responding to those arguments.

---

[2] The trial court misspoke, as only four months had passed between the hearing on sanctions and the trial.

8

In a tentative decision, the trial court noted its jurisdiction over the motion was "questionable" because its November 22, 2013 sanctions order was not for default, default judgment, or dismissal, as required to apply the mandatory provision of section 473, subdivision (b). The court also found that Klimek "had his day in court" and instead of acting on the trial court's advice at the hearing, Klimek "waited until the eve of trial before asking the Court for relief." Klimek did not contest the tentative ruling. On April 18, 2014, the trial court signed the tentative decision, which denied Klimek's motion for relief. Klimek timely filed this appeal.

## II. DISCUSSION

### A. TERMINATING, ISSUE, AND EVIDENCE SANCTIONS

Klimek raises multiple grounds for error, but he essentially argues: (1) the sanctions order was improper and excessive because Klimek's further responses were in substantial compliance with the discovery requests and because the trial court's tentative decision did not put Klimek on notice of its final ruling; and (2) the sanctions order provided a "windfall" to individual plaintiff and cross-defendant Reimer and individual cross-defendant Earle, even though it was the law firm (Earle & Reimer) that had propounded the requests and moved to compel the further responses. We are not persuaded by either argument.

#### 1. Governing Principles

"California discovery law authorizes a range of penalties for conduct amounting to 'misuse of the discovery process.' " (*Doppes v. Bentley Motors, Inc.* (2009) 174 Cal.App.4th 967, 991 (*Doppes*); § 2023.030.) Under the Civil Discovery Act, "[d]isobeying a court order to provide discovery" is one such misuse of the discovery process (§ 2023.010, subd. (g)), justifying sanctions that the California Supreme Court has described as "potent." (*Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 12.) These sanctions may include "monetary sanctions, contempt sanctions,

9

issue sanctions ordering that designated facts be taken as established or precluding the offending party from supporting or opposing designated claims or defenses, evidence sanctions prohibiting the offending party from introducing designated matters into evidence, and terminating sanctions that include striking part or all of the pleadings, dismissing part or all of the action, or granting a default judgment against the offending party." (*Ibid.*; § 2023.030, subds. (a)-(e).)  The Discovery Act separately identifies the failure to obey an order compelling further response to interrogatories as subject to "those orders that are just," including the imposition of any of the sanctions listed above. (§ 2030.300, subd. (e).)

"The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action." (*Calvert Fire Ins. Co. v. Cropper* (1983) 141 Cal.App.3d 901, 904 (*Calvert*).)  This discretion extends to deciding which discovery sanction to impose.  (*Kuhns v. State of California* (1992) 8 Cal.App.4th 982, 988 (*Kuhns*); *Parker v. Wolters Kluwer U.S., Inc.* (2007) 149 Cal.App.4th 285, 297 (*Wolters Kluwer*).)  Sanctions " 'should be appropriate to the dereliction, and should not exceed that which is required to protect the interests of the party entitled to but denied discovery.' " (*McGinty v. Superior Court* (1994) 26 Cal.App.4th 204, 211 (*McGinty*), quoting *Deyo v. Kilbourne* (1978) 84 Cal.App.3d 771, 793 (*Deyo*).)  Discovery sanctions are not intended as a means to punish, nor should they " 'put the prevailing party in a better position than he [or she] would have had if he [or she] had obtained the discovery sought and it had been completely favorable to his [or her] cause.' " (*McGinty, supra,* at p. 211, quoting *Deyo*, *supra*, at p. 793.)  " 'A decision to order terminating sanctions should not be made lightly.  But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.' " (*Doppes*, *supra*, 174 Cal.App.4th at p. 992, quoting *Mileikowsky v. Tenet Healthsystem*

10

(2005) 128 Cal.App.4th 262, 279–280, disapproved on another point in *Mileikowsky v. West Hills Hospital & Medical Center* (2009) 45 Cal.4th 1259, 1273.)

It is the appellant's burden on appeal from a discretionary ruling of the trial court to establish an abuse of discretion.  (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 331.)  We review factual determinations of trial courts relating to their discretionary rulings for substantial evidence, resolving all evidentiary conflicts in favor of the rulings.  (*Sears, Roebuck and Co. v. National Union Fire Ins. Co. of Pittsburgh* (2005) 131 Cal.App.4th 1342, 1350.)

### 2. The Trial Court Did Not Abuse Its Discretion in Ordering Terminating, Issue, and Evidence Sanctions

Klimek argues that because he ultimately provided further responses to the special interrogatories and produced documents, the sanctions were not warranted, or a lesser issue or evidence preclusion sanction could have served the corrective purpose of discovery sanctions.  As discussed earlier, however, the record reveals a persistent failure to comply with discovery obligations and court deadlines.  The record also shows a failure to file appropriate opposition to pending motions.  These failures amount to substantial evidence supporting the trial court's rulings.

#### a.  The Tentative Ruling Did Not Deprive Klimek of Notice

As a preliminary matter, Klimek's argument that the trial court did not properly announce its tentative ruling, depriving Klimek of notice of the issues for the hearing, is without merit.  He contends that after issuing a one-page tentative ruling, the trial court "issued a second and different tentative ruling and indicated issues that the court wanted further argument on, but no notice was given . . . as to this second tentative ruling."  Klimek argues that had he been informed by the two-page tentative ruling, he would have lodged the discovery responses that had been served, or at least brought a copy to the hearing.

Klimek's contention that the trial court surreptitiously updated its tentative ruling without informing the parties lacks merit given the court's recognition at the hearing that "I

11

know exactly what happened. You only got page one. . . . I'll print another one."  Furthermore, since Klimek's basis for opposing the threatened sanctions was his late service of discovery responses, it was his and his counsel's duty to present the court with those responses and to apprise the court of their purported sufficiency, with or without notice of the court's tentative ruling.  (See *Sinaiko*, *supra*, 148 Cal.App.4th 390, 406 [trial court "not required to speculate about what defendants' interrogatory responses might have contained"].)

Klimek also points to California Rules of Court, rule 3.1308 on the tentative ruling process.  That rule provides that a court that elects to issue tentative rulings "*may* also note [in the tentative] any issues on which the court wishes the parties to provide further argument." (Cal. Rules of Court, rule 3.1308(a)(1), italics added.)  This rule does not *require* the court to preview the issues for the parties and does not limit the court's discretion to consider other issues that are within the scope of the noticed motion.  Earle & Reimer's notice of motion properly set forth the grounds for the motion and the sanctions being sought.  In addition, Earle & Reimer's memorandum of points and authorities and supporting declaration thoroughly addressed the factual and legal grounds for the sanctions, giving Klimek adequate notice of the issues that likely would be considered at the hearing on sanctions.  (*Luri v. Greenwald* (2003) 107 Cal.App.4th 1119, 1124-1125 [purpose of notice is for the moving party to " 'sufficiently define the issues for the information and attention of the adverse party and the court' "].)

Finally, Klimek's counsel argued at the November 22, 2013 hearing that he received a copy of the motion for sanctions from his co-counsel and "[i]f there is some other service of that motion by mail or whatever, it did not come to my office."  This argument is inconsistent with the proof of service in the record, dated October 24, 2013, and with the declaration of compliance submitted before the hearing, which conveys an adequate understanding of the issues raised by the sanctions motion.

12

### b. The Filing of a "Declaration of Compliance" Did Not Alter the Trial Court's Discretion to Assess Sanctions

We also conclude that it was not an abuse of the trial court's discretion to issue sanctions despite counsel's representations that as of November 20, 2013, the service of further responses and production of documents fully satisfied Klimek's discovery obligations. The "declaration of compliance" neither mitigated the dilatory conduct leading to the motion for sanctions nor resolved the failure to obey the trial court's prior discovery orders, including the nonpayment of court-ordered monetary sanctions. Although Klimek argues the trial court abused its discretion by determining the further responses were not in substantial compliance without seeing them, it was Klimek's burden, as the party opposing the sanctions motion, to demonstrate compliance—a burden he did not meet.

The court in *Sinaiko*, *supra*, 148 Cal.App.4th 390, 405 considered a similar issue. There, the trial court had granted a motion to compel responses to interrogatories under section 2030.290, even though the responding party had served responses before the motion to compel was filed. On appeal, the court determined the trial court had authority to grant the motion "based on the information before it," including the moving party's statement that the responses served were "untimely and deficient." (*Sinaiko, supra,* at pp. 405-406.) The court explained: "The trial court . . . knew that defendants had served interrogatory responses, but also had a reasonable basis to conclude that defendants had not, in effect, responded to [specific interrogatories]. Defendants had the opportunity to put their interrogatory responses before the trial court. . . . They did not. The trial court was not required to speculate about what defendants' interrogatory responses might have contained." (*Id.* at p. 406.) The court also noted that an untimely response does not divest the trial court of its ability to issue sanctions. "Whether a particular response does resolve satisfactorily the issues raised by a motion is a matter best determined by the trial court in the exercise of its discretion, based on the circumstances of the case." (*Id.* at p.

13

409, citing Cal. Rules of Court, former rule 3.1030(a), now rule 3.1348(a) ["The court may award sanctions under the Discovery Act in favor of a party who files a motion to compel discovery, even though . . . the requested discovery was provided to the moving party after the motion was filed"].)

We find the reasoning in *Sinaiko* applicable to the sanctions under section 2023.030 for misuse of the discovery process. It is undisputed that Klimek failed to comply with the trial court's order to serve further responses to Earl & Reimer's special interrogatories within 20 days. Pursuant to section 2023.010, subdivision (g), this was a misuse of the discovery process. Whether the further responses served two months after the court's deadline and two days before the hearing on the motion for terminating sanctions placed Klimek in substantial compliance with his discovery obligations was within the trial court's discretion to decide. (*Sinaiko*, *supra*, 148 Cal.App.4th at p. 401.)

At the hearing, the parties disputed the responsiveness of Klimek's further responses to the special interrogatories. The trial court, however, provided sufficient grounds for issuance of the sanctions: "[T]he fact there were no timely responses, by operation of the law the objections are waived anyway. You have not filed a motion for relief from waiver and there are lawful court orders . . . requiring you to answer the discovery, which hasn't happened and you have not paid – your client hasn't paid the sanctions. [¶] . . . I've heard [counsel for Earle & Reimer] represent that the answers were not in substantial compliance . . . in fact, you have not even opposed the motion timely." The trial court thus articulated a host of reasons why it deemed the sanctions to be warranted. We find no abuse of discretion in its determination.

### c. The Trial Court Did Not Abuse its Discretion in Ordering Terminating, Issue, and Evidence Sanctions

Klimek contends the sanctions order was excessive and punitive, rather than appropriately tailored to correct the discovery abuses. Viewed in light of the pattern and

14

persistence of discovery misconduct, however, we do not find that the severity of the sanctions imposed constituted an abuse of the trial court's discretion.

The premise that sanctions should be corrective, not punitive, has a concrete foundation in California law.  (See, e.g., *Caryl Richards Inc. v. Superior Court* (1961) 188 Cal.App.2d 300, 303; *Deyo*, *supra*, 84 Cal.App.3d at p. 793; *McGinty*, *supra*, 26 Cal.App.4th at p. 211; *Wolters Kluwer*, *supra*, 149 Cal.App.4th at p. 301; *Liberty Mut. Fire Ins. Co. v. LcL Adm'rs, Inc.* (2008) 163 Cal.App.4th 1093, 1102 (*Liberty*); *Doppes*, *supra*, 174 Cal.App.4th at p. 991.)  There is a broad range of discovery abuses and attendant sanctions imposed in cases, largely depending on the pattern and persistence of sanctionable conduct and the impact on the opposing party's ability to litigate its case.

For example, in *McGinty*, *supra*, 26 Cal.App.4th at pp. 212, 214-215, which was decided before the Civil Discovery Act of 2004, a panel of this court determined that witness and evidence preclusion sanctions were tantamount to dismissing the petitioner's case, and were excessive because the behavior in that case did not involve a "willful failure to make discovery" but rather an "inadvertent receipt of documents in violation of a court order in a situation where the documents were legitimately discoverable by other means."  *McGinty* was a petition for peremptory writ challenging an order to exclude the petitioners' highly specialized expert witness after the expert improperly disclosed certain documents that were subject to a protective order.  (*McGinty, supra,* at pp. 206-207.)  Compared to cases affirming evidence preclusion sanctions based on a history of discovery abuses, the court in *McGinty* concluded the sanction was disproportionate to the offense and put the defendant in a better position than it would have been absent the violation, particularly because the documents would have been discoverable anyway.  (*Id.* at pp. 210-211.)

In contrast are cases affirming terminating sanctions after a pattern of willful discovery misconduct.  In *Miranda v. 21st Century Ins. Co.* (2004) 117 Cal.App.4th 913, 929 (*Miranda*), for example, the court affirmed a terminating sanction dismissing the

15

plaintiff's underinsured motorist arbitration, finding the trial court did not abuse its discretion by refusing to first impose a lesser sanction. The trial court had issued an order to compel the plaintiff to sign certain medical authorizations so the defendant could evaluate the plaintiff's injury claims. (*Miranda*, *supra*, at p. 919.) After the plaintiff continued to refuse to sign, the defendant moved for and was granted a terminating sanction of dismissal. (*Ibid.*) On appeal, the court found substantial evidence supported the dismissal because the plaintiff had rebuffed "[r]epeated attempts to obtain voluntary cooperation," and had "flatly refused to obey a court order." (*Id.* at p. 929.) The court also found that lesser sanctions would not have sufficed because monetary sanctions would not have provided the information to which the defendant was entitled, an evidence sanction would not have been effective because the offending party was not trying to use the evidence, "[a]nd the only issue sanction we can envision under these circumstances would be an order establishing that plaintiff's injury was not caused by the accident, a result equivalent to a dismissal of plaintiff's claim." (*Ibid.*)

*Liberty*, *supra*, 163 Cal.App.4th at p. 1102 also illustrates a pattern of failures to respond to discovery requests and obey the trial court's orders, resulting in sanctions striking the defendant's answer and cross-complaint. *Liberty* was a contract action in which the defendant alleged numerous affirmative defenses in its answer and filed a cross-complaint that claimed malfeasance and sought punitive damages. (*Liberty*, *supra*, at p. 1096.) After protracted attempts by plaintiff Liberty to get compliant responses to form interrogatories and special interrogatories, Liberty obtained two separate orders to compel further responses and for monetary sanctions. (*Id.* at p. 1096-1097.) Liberty later moved for and obtained terminating sanctions striking the answer and the cross-complaint. (*Id.* at pp. 1099-1100.) The appellate court affirmed the sanctions orders, finding that the discovery responses "submitted no meaningful information and claimed throughout that information will be 'developed' by 'future discovery,' " and the defendant repeatedly ignored meet and confer letters and repeated the same, inadequate

16

answers after two orders to compel further responses. (*Id.* at pp. 1102-1103.) The court concluded that the sanctions were based on a pattern of discovery abuses and that "[t]he trial court was not being punitive—it was exercising its broad authority to levy the ultimate sanction when prior efforts yielded no results." (*Id.* at p. 1105.)

Finally, in *Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 391-392 (*Gomez*), the court affirmed a terminating sanction of default judgment against the defendants after finding several examples in the record that the defendants had willfully violated the trial court's orders pertaining to interrogatories and requests for inspection and production of documents. The *Gomez* defendants argued that the trial court had erred in imposing terminating sanctions because they had not disobeyed the trial court's discovery orders but instead were unable to produce or preserve documents that simply did not exist. (*Gomez*, *supra*, at pp. 389-390.) The appellate court found no abuse of discretion in the trial court's order, noting sufficient evidence in the record to support the trial court's rejection of the defendants' claims and its concern that the defendants had concealed or destroyed documents and records. (*Id.* at pp. 391-392.)

The conduct displayed by Klimek and his counsel is not as egregious as the apparent concealment or destruction of evidence in *Gomez*, nor did the trial court here offer as many chances for correction as in *Liberty* before imposing terminating sanctions. But substantial evidence supports the trial court's findings of Klimek's failure to comply with the court's orders to provide further responses to interrogatories and to respond to the requests for production of documents. In addition, the failure to pay the monetary sanctions, the failure to file an opposition to the motion for terminating sanctions, and the failure to provide the trial court with a copy of the discovery responses that ultimately were served before the hearing on the sanctions motion, further compounded the discovery abuses and reflected, as the trial court observed, a "lack of interest in complying with his discovery obligations." By the November 22, 2013 hearing on the motion for sanctions, Klimek had not paid either of the monetary sanctions imposed and

17

had not opposed a motion that carried the potential for terminating, issue, and evidence sanctions. As with the plaintiff's refusal to sign medical authorizations in *Miranda*, despite the court's order, and the defendant's continued failure in *Liberty* to provide substantive, supplemental interrogatory responses despite the court's orders and its promises to do so, the trial court here was not required to impose lesser sanctions when "prior efforts yielded no results." (*Liberty, supra,* 163 Cal.App.4th at p. 1105; see also *Miranda, supra*, 117 Cal.App.4th at p. 929.)

Klimek offers no support in the record for his contention that the sanctions were imposed only to punish him. As we previously explained, the fact that Klimek served "41 pages" of interrogatory responses "without objections" does not expunge the record of discovery misuse, and without more, does not signify substantial compliance with Plaintiff's discovery requests.

We find equally unpersuasive Klimek's contention that the trial court's final order, which included Earle & Reimer's proposed issue and evidence sanctions, as well as terminating sanctions, "went beyond" the tentative ruling and constituted an abuse of discretion. Klimek was on notice of the sanctions Earl & Reimer sought when the motion was served, but he simply failed to timely or effectively respond. The trial court's tentative ruling stated that "[t]he motion for terminating sanctions is GRANTED *as requested in the notice of motion.*" (Italics added.) Klimek cites no legal authority that would prevent the trial court from issuing a final order that is "inconsistent" with its tentative ruling, so long as that order is consistent with the scope of relief sought by the motion itself. (*See* Code Civ. Proc., § 1010; Cal. Rules of Court, rule 3.1110(a).)

The issue on appeal is not " 'what sanction we would have imposed, but whether the trial court abused its discretion . . . .' " (*Miranda*, *supra*, 117 Cal.App.4th at p. 929, citation omitted.) On this record, we find no abuse of discretion in the trial court's imposition of terminating, evidence, and issue sanctions. We also find it telling that after the trial court granted Earle & Reimer's motion for terminating sanctions, it offered

18

Klimek the following suggestion: "If you want relief from that, [counsel], you can go by the book and do that. . . . [¶] . . . And you may want to talk to [counsel for Earle & Reimer] about working out a possible arrangement to set this aside and comply with the prior orders to the letter including the payment of sanctions . . . ." Klimek and his counsel did not seek relief for several months.

### 3. Including Plaintiff Reimer Within the Scope of Sanctions Relief Was Appropriate

Klimek also contends the trial court erred in granting relief for both Plaintiffs and cross-defendant Janice Earle, because Earle & Reimer alone propounded the requests for special interrogatories, as well as the motion to compel further responses and the motion for terminating sanctions. Earle is not a party to this appeal, has never appeared in the action, and is not named in the sanctions order (with the exception of the general reference to introducing evidence "against any plaintiff *or cross-defendant*"). (Italics added.) The sanctions order states in several places that various sanctions shall apply "as to both plaintiffs." The two Plaintiffs are Earle & Reimer and Pauline Reimer.

As to the inclusion of Reimer within the sanctions order, Klimek's argument lacks merit because sanctions may be issued in appropriate circumstances in favor of a party who did not propound the discovery that triggered the sanctions.

Courts have looked to the Civil Discovery Act for guidance in deciding whether sanctions may benefit a party who did not participate in the underlying discovery dispute. In *Calvert*, *supra*, 141 Cal.App.3d at p. 905, the court affirmed the sanction of dismissal for two defendants although only one defendant had propounded the discovery. The court found that the language of former section 2034, subdivisions (b) and (d),[3] which did not limit the party who could request or benefit from sanctions, justified the relief. (*Id.* at

---

[3] Former Code of Civil Procedure section 2034, as part of the former Civil Discovery Act, was repealed in 2004 and replaced by Title 4 of Part 4 of the Code of Civil Procedure, beginning with section 2016.010. (Stats. 2004, ch. 182, §§ 22-23.)

p. 905.) The court reasoned that "to require a coparty, whose interest is identical, to engage in a formal ritual simply duplicating the original party's discovery request merely to perfect the coparty's right to sanctions upon noncompliance would actually threaten litigants similarly situated to appellant with a proliferation of identical discovery requests. Such an exercise would serve no legitimate discovery purpose, and there is nothing in the language of section 2034 or in reason which would support such a strained rationale." (*Ibid.*)

In *Wolters Kluwer*, *supra*, 149 Cal.App.4th at p. 298, the court contrasted the reasoning in *Calvert* against another case in which the court reversed a monetary sanctions order on behalf of defendants who " 'neither having noticed the deposition nor initiated the motion to compel, were but incidental beneficiaries to both proceedings.' " (*Wolters Kluwer, supra*, at p. 298, quoting *Townsend v. Superior Court* (1998) 61 Cal.App.4th 1431, 1438 (*Townsend*).) After reviewing the provisions of the Civil Discovery Act relied on in *Calvert* and *Townsend*, as well as section 2023.030, which forms the basis for the sanctions order in this case, the court in *Wolters Kluwer* determined the proper guiding principle was "in the statutory language instructing the trial court, when imposing discovery sanctions, to 'make those orders that are just.' " (*Wolters Kluwer, supra*, 149 Cal.App.4th at pp. 300-301, citing § 2025.480, subd. (g) and § 2030.300, subd. (e).) The court acknowledged that as in *Calvert*, "there can be circumstances in which the discovery interests of the propounding party and a co-party are so closely aligned it would be a useless duplication of effort for both parties to pursue the same discovery and invoke the same remedies," in which case the trial court may find that a "sanction award to both would be just." (*Wolters Kluwer, supra*, at pp. 301-302.) Absent such circumstances, however, sanctions that award a party "who took no part in the discovery dispute until it was time to join the motion for sanctions" would be inconsistent with the purpose of discovery sanctions. (*Id.* at p. 301.)

20

Reimer is a principal of the law firm Earle & Reimer.  The allegations in the cross-complaint do not differentiate between cross-defendants, other than in paragraph four, which alleges "the individual defendants have personally guaranteed all or part of Klimek's claims as part of organizing as a professional corporation" and the "individual defendants are also liable on all or part [of] Klimek's claims as the direct actors in the facts and circumstances alleged herein."  The contention interrogatories propounded by Earle & Reimer requested the basis for Klimek's allegations as to all cross-defendants.  They said, for example:  "State in detail all facts upon which you base your allegation in paragraph 10 of the CROSS-COMPLAINT that cross-defendants 'billed the cross-complainant for hundreds of hours of work that . . . was never actually done.' "  Plaintiffs argue that the interests of Reimer and Earle & Reimer are closely aligned, if not identical, due to Reimer's role at Earle & Reimer, her representation of Klimek in the marital dissolution as an Earle & Reimer employee, and her interest in the discovery propounded, which is the same as Earle & Reimer's.  Klimek does not suggest otherwise.

Furthermore, the notice of motion and motion for terminating, issue, and evidence sanctions should have alerted Klimek that Earle & Reimer sought relief on behalf of both Plaintiffs.  With respect to each proposed finding of fact and evidentiary exclusion, the notice expressly identified "EARLE & REIMER, and any of its principals, agents or employees" as the intended beneficiaries.  The motion itself requested "terminating sanctions **dismissing and/or striking the following pleadings or portions of pleadings** *as to both plaintiffs*" and "[i]n addition or alternatively, plaintiff requests that **the following designated facts be taken as established** *as to both plaintiffs. . . .* "  (Boldface in original; italics added.)  And the trial court was apprised of the inclusion of both Plaintiffs in the final sanctions order, stating on the record, "I see the interlineations that you made, and I will initial those, or I shouldn't say interlineations, the additions."

21

We find the record establishes the identity of interests shared by coplaintiffs Earle & Reimer and Reimer. We find no abuse of discretion in the trial court's decision to grant relief in favor of both Plaintiffs.

## B. DENIAL OF KLIMEK'S MOTION TO CONTINUE THE TRIAL

Klimek brought two ex parte applications—one on March 7, 2014, seeking to shorten time to file a motion to continue the March 17, 2014 trial date, and one on March 11, 2014, seeking to advance the hearing on his motion for relief pursuant to section 473, subdivision (b). And on the first day of trial, Klimek moved to vacate or continue the trial so the motion for relief could be heard before the trial. Each of these requests came before a different judge, and each was denied. Klimek contends the denial of his motion to continue or vacate the trial was an abuse of discretion because the principles favoring a trial on the merits outweigh other considerations, and no compelling reasons justified the denial.

The California Rules of Court direct parties and their counsel to regard the trial date as certain. (Cal. Rules of Court, rule 3.1332(a).) Continuances of trials are disfavored and are granted only on an affirmative showing of good cause requiring the continuance. (*Id.*, rule 3.1332(c); see also Gov. Code, § 68607, subds. (f), (g) [responsibility of the trial court to "[c]ommence trials on the date scheduled" and maintain "a firm, consistent policy against continuances, to the maximum extent possible and reasonable"].) " 'The decision to grant or deny a continuance is committed to the sound discretion of the trial court. [Citation.] The trial court's exercise of that discretion will be upheld if it is based on a reasoned judgment and complies with legal principles and policies appropriate to the case before the court. [Citation.]' " (*Thurman v. Bayshore Transit Management, Inc.* (2012) 203 Cal.App.4th 1112, 1126, citations omitted.) Reviewing courts will "uphold a trial court's choice not to grant a continuance unless the court has abused its discretion in so doing." (*In re Marriage of Falcone* (2008) 164 Cal.App.4th 814, 823 (*Falcone*).)

22

Klimek argued in support of his motion that good cause existed based on a "significant, unanticipated change in the status of the case as a result of which the case is not ready for trial." (Cal. Rules of Court, rule 3.1332(c)(7).) The unanticipated change was the impact of the sanctions order in light of Plaintiffs' motion in limine. The trial judge reviewed Klimek's written submission and heard argument before denying the motion for continuance. Although the trial court did not explain its rationale, the record reflects a lack of good cause for the motion due to the lengthy delay in seeking relief from both the sanctions order and the trial date. Moreover, we presume the trial court's order to be correct and indulge "[a]ll intendments and presumptions . . . to support [the judgment] on matters as to which the record is silent, and error must be affirmatively shown." (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

Klimek's counsel was present when the trial court signed the sanctions order on November 22, 2013. The trial court suggested that Klimek "go by the book" if he wanted to seek relief from the order. Klimek's counsel was also present at the trial setting conference on February 4, 2014, and did not object to the trial date. Klimek took no action on the sanctions order or trial date until March 7, 2014, one week before trial, although the sanctions order had issued more than three months earlier. Klimek did not attempt to explain this delay and did not include a supporting declaration with his motion. (Cal. Rules of Court, rule 3.1332(b) ["supporting declarations" required for motion or ex parte application for a continuance].)

The trial court must consider "all the facts and circumstances that are relevant" to deciding whether to grant a continuance. (Cal. Rules of Court, rule 3.1332(d).) Among these facts and circumstances are proximity of the trial date, the availability of alternative means to address the problem that gave rise to the motion for continuance, and whether the interests of justice are best served by a continuance. (*Ibid.*) Klimek contends it was error for the trial court to refuse his request because there was "no compelling consideration" that outweighed his need for the motion for relief to be heard before trial.

23

But this argument ignores the requirement that a party must move for a continuance "as soon as reasonably practical once the necessity for the continuance is discovered." (Cal. Rules of Court, rule 3.1332(b); *Falcone*, *supra*, 164 Cal.App.4th at p. 823 [no good cause when plaintiff knew for a month she might not have attorney at her contempt hearing but waited until the hearing day to request a continuance].) Here, there was no "significant, unanticipated change" preventing the case from being ready for trial (Cal. Rules of Court, rule 3.1332(c)(7)), because the impact of the sanctions order did not change between its issuance and the trial date. A cursory reading of the sanctions order would have revealed the danger it posed to Klimek at trial. In the face of an order imposing such serious issue and evidence sanctions, we find the delay in bringing the motion for continuance reveals a lack of diligence.

Klimek points to two cases, both of which are distinguishable. In *Oliveros v. County of Los Angeles* (2004) 120 Cal.App.4th 1389, 1395-1396 (*Oliveros*), the appellate court found the trial court had failed to balance the interests of efficiency with that of trying a case on its merits when the circumstances forcing the absence of the defendant's counsel at trial were "beyond his immediate control," and the defendant "sought a continuance, not because he was unprepared for trial, or because he sought a technical advantage by delaying trial, or for any other suspect reason." (*Id.* at p. 1400.) The second case, *Hernandez v. Superior Court* (2004) 115 Cal.App.4th 1242, 1244 (*Hernandez*), also involved denial of a continuance that would have forced the plaintiff to trial without counsel or adequately prepared counsel. The appellate court in *Hernandez* found that the serious illness and death of the plaintiff's attorney during the final stages of litigation constituted good cause for the request to continue the trial and reopen discovery, and it required the trial court to consider the goal of efficiency " 'in an atmosphere of substantial justice.' " (*Id.* at p. 1246, quoting *Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 398.)

24

The policy to promote the just resolution of a case on its merits is as applicable here as it was in *Oliveros* and *Hernandez*. But we cannot ignore the markedly different circumstances that led to the request for a continuance in those cases as opposed to here. The serious illness and death of counsel during the final stages of litigation in *Hernandez*, and the unexpected change in a trial date in *Oliveros* that was beyond counsel's control and prevented him from appearing for trial, are not comparable to Klimek's unexplained delay in seeking relief from the sanctions order. *Oliveros* and *Hernandez* stand for the proposition that trial courts should grant a continuance that is " 'supported by a showing of good cause' " and " 'absent a lack of diligence or other abuse circumstances,' " but they do not diminish the discretion of the trial court " 'to deny a request for a continuance when there is no good cause for granting one. . . .' " (*Hernandez*, *supra*, 115 Cal.App.4th at pp. 1246-47, quoting *Estate of Meeker* (1993) 13 Cal.App.4th 1099, 1105.) Because Klimek failed to show good cause, the trial court did not abuse its discretion in denying his motion for continuance.

## C. ENFORCEMENT OF THE SANCTIONS ORDER AT TRIAL

Klimek contends the trial court erred in granting the motion in limine to enforce the sanctions order by preventing him from putting on a defense to Plaintiffs' evidence. Plaintiffs respond that the trial court's ruling did not deny Klimek the right to defend against the complaint's causes of action, but rather Klimek failed to make an offer of proof that did not conflict with the sanctions order. Plaintiffs cite Evidence Code section 354 for support, which limits reversal of a judgment based on the erroneous exclusion of evidence unless the reviewing court finds that the error resulted in a miscarriage of justice and that "[t]he substance, purpose, and relevance of the excluded evidence was made known to the court by the questions asked, an offer of proof, or by any other means." (Evid. Code, § 354, subd. (a).)

25

To the extent the trial court's ruling on a motion in limine precludes an entire cause of action, the ruling is subject to independent review on appeal as though the court had granted a motion for nonsuit. (*Dillingham-Ray Wilson v. City of Los Angeles* (2010) 182 Cal.App.4th 1396, 1402; *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, 1595.) We thus review the trial court's order de novo, examining the record in the light most favorable to the party offering the evidence. (*City of Livermore v. Baca* (2012) 205 Cal.App.4th 1460, 1465.) An error of law that has resulted in denial of a fair hearing for the nonmoving party is reversible per se. (*Kelly v. New West Federal Savings* (1996) 49 Cal.App.4th 659, 677.)

The sanctions order imposed these issue sanctions: "The following designated facts shall be taken as established as to both plaintiffs: [¶] a. All billing by Plaintiff Earle & Reimer, and any of its principals, agents or employees, to Defendant John Klimek was fair and reasonable; [¶] b. There was no malpractice, negligence, or breach of duty of care by Plaintiff Earle & Reimer or any of its principals, agents, or employees in the performance of any services to defendant John Klimek; [¶] c. There was no breach of fiduciary duty by Plaintiff Earle & Reimer or any of its principals, agents or employees to Defendant John Klimek; [¶] d. Defendant John Klimek has not sustained any damage as a result of any billing or the performance of services by Plaintiff Earle & Reimer or any of its principals, agents or employees; and [¶] e. Defendant John Klimek has not sustained any special damages as a result of any billing or the performance of any services by Plaintiff Earle & Reimer or any of its principals, agents or employees."

The sanctions order also imposed evidence sanctions that prohibited Klimek "from introducing into evidence facts relating to the following designated matters against any plaintiff or cross-defendant: [¶] a. Any alleged negligence, breach of duty of care or malpractice by Plaintiff Earle & Reimer or any of its principals, agents or employees; [¶] b. Any alleged billing impropriety, excessive billing or overbilling by Plaintiff Earle & Reimer or any of its principals, agents or employees; [¶] c. Any alleged breach of

26

fiduciary duty by Plaintiff Earle & Reimer or any of its principals, agents or employees; [¶] d. Any damages allegedly sustained by Defendant John Klimek as a result of any alleged negligence, malpractice, breach of fiduciary duty, improper billing, excessive billing or overbilling by Plaintiff Earle & Reimer or any of its principals, agents or employees."

Klimek argues that he should have been permitted to negate Plaintiffs' evidence and put on any new evidence "so long as it was consistent with" the sanctions order. Klimek points to his answer generally denying the complaint, whereby Plaintiffs had the burden to prove each element of their claims. As to Plaintiffs' first cause of action for breach of contract, Klimek contends he should have been allowed to challenge the validity of the fee agreement under Business and Professions Code section 6148 for failure to state the basis of the bills rendered. Klimek also contends that Plaintiffs had to prove the "services rendered" element of the common count causes of action, and that there existed a new contract between the parties, separate from the original contract for services, that served as the basis for the account stated cause of action. Klimek's counsel made the same general arguments to the trial court, stating that "I don't think Defendant has to put on any evidence [contradicting the sanctions order] just to negate Plaintiffs' evidence. They say: This is the bill. We did the work. Why can't [Klimek] say: No, you didn't, and whatever explanation he has to that. How does that violate the order?" The trial court rejected this proposed approach and found that the sanctions order prohibited Klimek "from anything regarding billing impropriety, excessive billing, or overbilling. It seems to me that the only real significant defense as to a legal claim is excessive or overbilling. . . . [¶] . . . They're going to stand up and say: Here is the contract. Here is my bill. I don't think you can put on any evidence to counter that. Plain and simple."

Viewing the record in the light most favorable to Klimek, we find that his efforts to identify a means of negating Plaintiffs' claims without violating the sanctions order fell short. Klimek's argument regarding the breach of contract cause of action provides

27

an example of his inability to work around the extensive issue and evidence sanctions imposed. The complaint alleged that Plaintiffs and Klimek entered into a written contract for attorney services at a stated rate, that Plaintiffs performed those services, and that Klimek breached the contract by refusing to pay $32,480 owed for services rendered. Klimek argued that no part of the sanctions order established the validity of the fee agreement or prohibited Klimek from voiding the agreement by showing the bills were not "clearly stated" in conformance with Business and Professions Code section 6148. Plaintiffs responded that Klimek could not support that defense due to the evidence sanction preventing him from introducing facts relating to "[a]ny alleged billing impropriety, excessive billing or overbilling."

We agree that to challenge Plaintiffs' bills as to form or content would require introducing facts to show billing impropriety or excess. In addition, the issue sanctions establishing that Plaintiffs' billing "was fair and reasonable" and that Plaintiffs did not breach any fiduciary duty or duty of care precluded a challenge to Plaintiffs' performance of the contract on other grounds.

Similarly, with respect to Plaintiffs' burden to establish entitlement to the amount of fees charged, Klimek contends he should have been allowed to negate evidence pertaining to factors set forth in Rule 4-200(B) of the Rules of Professional Conduct, including the amount of fees charged compared to value received, the attorney's experience and reputation, and the client's informed consent to the fee. But the issue sanction establishing that all billing to Klimek was "fair and reasonable" minimized or negated Plaintiffs' need to make an affirmative showing of entitlement to the amount of fees charged. Klimek's counsel conceded this point at the hearing: "If I separate account stated, I think I would be precluded from saying anything on a common count. If we're going to give full credence to the phrase *fair and reasonable*, then I guess I can't say anything as to value. I think I understand the court's ruling there." (Italics in original.)

28

As to Plaintiffs' account stated cause of action, Klimek argues that it "would absolutely have failed" due to Plaintiffs' "own lack of evidence." "An account stated is an agreement, based on the prior transactions between the parties, that the items of the account are true and that the balance struck is due and owing from one party to another." (*Gleason v. Klamer* (1980) 103 Cal.App.3d 782, 786, citing *Trafton v. Youngblood* (1968) 69 Cal.2d 17, 25.) An account stated requires a showing that the debtor has assented to the account, forming the "new contract." (*Ibid.*) Assent may be established in some circumstances by a failure to object to the account within a reasonable time. (*Trafton v. Youngblood*, *supra*, at pp. 25-26.)

We agree with Klimek that the issue and evidence sanctions would not have precluded him from potentially showing that he never assented to the account, as evidenced by his refusal to pay the Plaintiffs' final invoices. But Klimek made no such offer of proof. Klimek's only proffer was to state: "I think [the sanctions order] would say nothing as to an account stated. Elements of account stated have nothing to do with what's been said here." The record reflects no attempt by Klimek's counsel to present the trial court with the "substance, purpose, and relevance" of any evidence that Klimek wished to offer to negate an element of the account stated cause of action. (Evid. Code, § 354, subd. (a); *People v. Espinoza* (2002) 95 Cal.App.4th 1287, 1304 [no error where testimony that could have challenged victim's credibility was not proffered before the trial court].) We also find that because Klimek's proposed defenses were insufficient to counter the breach of contract and common count causes of action, any error with respect to the account stated cause of action was harmless. (Evid. Code § 354 [exclusion error must have "resulted in a miscarriage of justice" to warrant reversal].) We thus conclude that the trial court did not err in excluding Klimek's proposed defenses to Plaintiffs' causes of action since they conflicted with the sanctions order.

## D. DENIAL OF KLIMEK'S MOTION FOR MANDATORY RELIEF PURSUANT TO SECTION 473, SUBDIVISION (B)

### 1. Factual Basis for the Motion for Relief

Following the ruling on Plaintiffs' motion in limine and entry of judgment for Plaintiffs, Klimek filed a motion for relief seeking to vacate or set aside the sanctions order under the mandatory provision of section 473, subdivision (b). Klimek argued that his counsel was solely responsible for handling discovery in the case and was at fault for the sanctions, because counsel "did not supply the further responses and forced the motion to compel," "was late in copying the documents from the file and providing them[,] forcing another motion to compel," and "prepared the further responses that were at issue in the motion for terminating sanctions." Klimek himself "did not know about the untimely responses, the inadequate responses, or the motions." Also, Klimek and his counsel each offered a declaration confirming Klimek's reliance on counsel and counsel's responsibility for the discovery.

Plaintiffs opposed the motion for relief on multiple grounds, arguing: (1) Klimek's further responses to the special interrogatories remained nonresponsive and incomplete; (2) the declarations of Klimek and his counsel were not credible in disavowing Klimek's role in the litigation and the resulting sanctions; (3) mandatory relief under section 473, subdivision (b) likely did not apply to discovery sanctions and certainly not to a deliberate scheme to hinder or delay discovery; and (4) any relief after Klimek's four-month delay and despite the trial court's express admonition to go "by the book" to try to set aside the sanctions order would severely prejudice Plaintiffs.

The trial court issued a tentative decision denying the motion. The tentative ruling explained that the court's jurisdiction over the motion for relief was "questionable" because there was a judgment entered, and the mandatory provision of section 473, subdivision (b) applied only to defaults, default judgments, and dismissals. The court explained that its November 22 sanctions order was not a default or default judgment,

30

and though the portion affecting Klimek's cross-complaint could be viewed as a dismissal, setting aside that part of the order would not impact the issue or evidence sanctions. The trial court also found that because Klimek's counsel had appeared at the November 22 hearing and argued against sanctions, mandatory relief from a dismissal was not available under the statute. The trial court did not make a finding as to whether Klimek's counsel alone was at fault for the sanctions. The court concluded: "Put simply, Defendant had his day in court. Indeed, the Court expressly encouraged Defendant to seek relief from the November 22 Order. Instead of acting on that advice, Defendant waited until the eve of trial before asking the Court for relief. [¶] Based upon the above discussion, the Court finds that the mandatory relief provision of section 473, subdivision (b), is inapplicable to this case."

### 2. Legal Framework

Section 473, subdivision (b) "empowers a court to grant relief in appropriate cases from attorney error" under its mandatory or discretionary provisions. (*Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1414 (*Huh*).) Klimek sought relief only under the mandatory provision, which states: "Notwithstanding any other requirements of this section, the court *shall*, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) *resulting default* entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting *default judgment* or *dismissal* entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (§ 473, subd. (b), italics added.)

The California Supreme Court has described the mandatory provision of section 473 as "narrowly cover[ing] only default judgments and defaults that will result in the

31

entry of judgments" (*Even Zohar Const. & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838 (*Even Zohar*)) and as "a narrow exception to the discretionary relief provision for default judgments and dismissals." (*Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 257.)  The purpose of the relief provision is "to promote the determination of actions on their merits" and, more specifically, to " 'relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits.' " (*Even Zohar*, *supra*, 61 Cal.4th at p. 839, citation omitted.)

California courts historically have been divided as to whether the mandatory relief provision applies to dispositions—other than defaults or dismissals—that arguably are procedurally equivalent to defaults or dismissals.  On one side are those courts that have limited construction of the provision to its express terms.  (See, e.g., *Peltier v. McCloud River R.R. Co.* (1995) 34 Cal.App.4th 1809 (Peltier) [provision did not apply to discretionary dismissal for delay in prosecution]; *English v. IKON Business Solutions, Inc.* (2001) 94 Cal.App.4th 130 (*English*) [provision did not apply to a summary judgment]; *Prieto v. Loyola Marymount University* (2005) 132 Cal.App.4th 290 [same]; *Hossain v. Hossain* (2007) 157 Cal.App.4th 454 [provision did not apply to an order enforcing settlement agreement]; *Noceti v. Whorton* (2014) 224 Cal.App.4th 1062 [provision did not apply to entry of judgment after party failed to appear for trial].)  In *Huh*, a panel of this court agreed with this line of cases in the context of an unopposed summary judgment and held that "the mandatory relief provision applies only to defaults, default judgments, and dismissals," and not to their procedural equivalents. (*Huh*, *supra*, 158 Cal.App.4th at p. 1415.)

Other courts have construed the provision more broadly to reach other circumstances deemed to be procedural equivalents to defaults or dismissals based on the rationale that a party should not be deprived of a hearing on the merits due to the attorney's neglect.  (See, e.g., *In re Marriage of Hock & Gordon–Hock* (2000) 80

32

Cal.App.4th 1438, 1443 [relief applied to judgment after attorney failed to appear at trial]; *Avila v. Chua* (1997) 57 Cal.App.4th 860 [relief applied to a summary judgment where court struck untimely opposition].)  Courts applying the narrower interpretation have characterized these decisions as " 'understandable, yet ultimately misguided quests to salvage cases lost by inept attorneys,' which 'have applied the mandatory provision far beyond the limited confines the Legislature intended.' " (*Huh*, *supra*, 158 Cal.App.4th at p. 1415, quoting *English*, *supra*, 94 Cal.App.4th 130, 148.)

Also unresolved is the specific question whether discovery sanctions that result in a default or a dismissal are within the purview of section 473, subdivision (b)'s mandatory relief provision.  At least to the extent a discovery sanction prescribes a "default" or "dismissal," two courts have found the mandatory provision does apply. (*Matera v. McLeod* (2006) 145 Cal.App.4th 44, 65-66 (*Matera*) [sanction striking the answer and entry of a default qualified for mandatory relief from default judgment]; *Rodriguez v. Brill* (2015) 234 Cal.App.4th 715, 725-726 (*Rodriguez*) [sanction striking the complaint and entering a dismissal qualified for mandatory relief].)  Other courts have refrained from deciding the issue and instead have denied the applicability of section 473, subdivision (b) to discovery sanctions on other grounds.  (See, e.g., *Johnson v. Pratt & Whitney Canada, Inc.* (1994) 28 Cal.App.4th 613, 622 (*Johnson*); *Jerry's Shell v. Equilon Enterprises, LLC* (2005) 134 Cal.App.4th 1058, 1073 (*Jerry's Shell*).)

### 3.  Analysis

Klimek contends that the mandatory provision of section 473, subdivision (b) applies to discovery orders that impose sanctions or that result in a dismissal or in a judgment equivalent to a default.  But as this case illustrates, the range of available sanctions for misuse of the discovery process under section 2023.030, including terminating sanctions, do not always result in default, default judgment, or dismissal.  We therefore limit our inquiry to the particular sanctions, and resulting judgment, that are the subject of this appeal.  We conclude that mandatory relief does not apply because the

33

sanctions order did not result in a default, a default judgment, or a dismissal within the meaning of the statute.

The court in *English* analyzed the terms "default," "default judgment," and "dismissal" under section 473, subdivision (b). That court concluded that a "default" for purposes of section 473, subdivision (b) is "entered by the clerk (or the court) when a defendant fails to answer a complaint," and not "every 'omission' or 'failure' in the course of an action that might be characterized as a 'default' under the more general meaning of the word." (*English*, *supra*, 94 Cal.App.4th at p. 143, footnote omitted.) Thus understood, the term "default judgment" is simply "a judgment entered after the defendant has failed to answer the complaint and the defendant's default has been entered." (*Ibid.*) With respect to the term "dismissal," it must be construed as having a similarly limited meaning that effectuates "the legislative intent to achieve parity between defendants and plaintiffs in their entitlement to relief under the mandatory provision of section 473(b)." (*Id.* at p. 145.) This leads to the conclusion that the mandatory relief provision applies only to " 'those dismissals which occur through failure to oppose a dismissal motion—the only dismissals which are procedurally equivalent to a default.' " (*Ibid.*, quoting *Peltier*, *supra*, 34 Cal.App.4th at p. 1821; *Huh*, *supra*, 158 Cal.App.4th at p. 1416.)

In *Huh*, this court agreed with *English* and did not extend the mandatory provision of section 473, subdivision (b) to a summary judgment against the appellant after his attorney failed to oppose the summary judgment motion. (*Huh*, *supra*, 158 Cal.App.4th at p. 1416.) We explained, quoting *English* at page 144: " 'It is not an appellate court's task, nor, indeed, its prerogative, when interpreting a statute, to extend the scope of the statute to encompass situations 'analogous' to those the statute explicitly addresses.' " (*Huh*, *supra*, at p. 1417.)

We will adhere to the reasoning behind our decision in *Huh* and reject the notion that the mandatory relief provision may be construed "to reach other circumstances

deemed to be procedural equivalents" when the "statutory language is unequivocal." (*Id.* at p. 1415, 1417.)  Thus, it is not enough that a party " 'loses his or her day in court due to attorney error' " (*ibid.*, citation omitted); the loss must occur in one of the ways set forth in the statute.

By its terms, the sanctions order in this case was not for a default, a default judgment, or a dismissal, with the possible exception of the dismissal of Klimek's cross-complaint.  But as the trial court noted in denying the motion for relief, setting aside that part of the sanctions order "would not undo the judgment in favor of Plaintiffs" and "would similarly have no effect on the other portions of the November 22 Order, which granted Plaintiffs' request for evidentiary [and issue] sanctions."

We find that the sanctions order did not immediately or automatically foreclose all potential for Klimek to defend against Plaintiffs' claims, particularly considering the trial court's statements to counsel that he could talk to opposing counsel to "work[] out a possible arrangement to set this aside and comply with the prior orders to the letter . . . ." Nor can the underlying discovery abuse be construed as equivalent or even analogous to a failure to answer the complaint or a failure to oppose a dismissal motion, because the actions of Klimek's counsel as declared in his affidavit in support of the motion for relief described a sequence of events and decisions that led to terminating sanctions.  Plaintiffs argue that these actions were part of a strategy of discovery avoidance and delay for which mandatory relief is not available.  (*Jerry's Shell*, *supra*, 134 Cal.App.4th at p. 1073 [no mandatory relief for counsel's strategic decision not to respond to discovery].) Because we conclude the sanctions order is not properly the subject of a motion for mandatory relief pursuant to section 473, subdivision (b), we need not resolve whether the discovery abuse was the result of a poorly executed tactical decision or, as Klimek contends, a series of nonstrategic missteps.

Klimek relies on several cases to argue that discovery sanctions are covered by the mandatory relief provision.  In *Lang v. Hochman* (2000) 77 Cal.App.4th 1225, 1228

35

(*Lang*), the defendants appealed from a $22 million default judgment that resulted from terminating sanctions for discovery misconduct after the trial court denied a motion for mandatory relief. The issue in *Lang* was "whether section 473, subdivision (b) relief applies when the attorney *and* the client are *both* responsible for discovery misconduct that results in a default judgment or dismissal of the action," (*ibid.*) not whether the relief provision applied to the order for terminating sanctions. The appellate court in *Lang* framed its analysis strictly in light of the default judgment: "We determine that where the parties to a lawsuit have contributed to a default or dismissal, they are not entitled to relief pursuant to subdivision (b)." (*Id.* at p. 1248.) *Lang* appears to have presumed, without discussion, the applicability of the mandatory relief provision to the terminating sanction (which, unlike here, was the striking of the answer and entry of default). (*Id.* at p. 1240.) Because it did not decide the issue, it does not support Klimek's argument. (*Sonic-Calabasas v. Moreno* (2013) 57 Cal.4th 1109, 1160 (Sonic) [" 'cases are not authority for propositions not considered' "].)

Two other decisions cited by Klimek also refrained from deciding the issue. *Johnson*, *supra*, 28 Cal.App.4th 613, involved issue and evidence sanctions, and a terminating sanction striking the defendant's answer except as to the issue of damages. (*Id.* at pp. 620-621.) The question on appeal was not whether the mandatory relief provision applied to the sanctions, but whether the trial court abused its discretion in finding that the attorney's affidavit claiming responsibility for the discovery misconduct lacked credibility. (*Id.* at p. 622.) The court limited its analysis to that issue, stating in a footnote: "[W]e do not reach the issue of whether the attorney affidavit provision of section 473 applies to discovery sanctions. Resolution of that issue is unnecessary here." (*Id.* at p. 631, fn. 10.)

Similarly, in *Jerry's Shell*, *supra*, 134 Cal.App.4th 1058, 1073, the court affirmed the trial court's order denying the plaintiffs' motion for relief following a dismissal sanction without deciding whether the mandatory relief provision applied to the

36

discovery sanction. The court reviewed several court opinions on the provision's applicability to different types of dismissals and noted that several cases "have . . . concluded that an overly expansive interpretation of the term 'dismissal' should be avoided." (*Jerry's Shell, supra*, at p. 1071.) But the court ultimately refrained from resolving the applicability question and instead affirmed the denial of the motion for relief on other grounds, specifically the deliberate conduct of the plaintiffs' counsel in failing to respond to discovery or to oppose discovery motions. (*Id.* at p. 1074.) Writing in a concurrence, Justice Epstein expressed that the mandatory provision of section 473, subdivision (b) does not apply to terminating sanctions: "Certainly, the failure to comply with discovery orders, resulting in the ultimate sanction of dismissal, cannot be fitted within the rationale of that statute." (*Id.* at p. 1075 (conc. opn. of Epstein, P.J.).) Thus, contrary to Klimek's portrayal of *Jerry's Shell* as a case that "made clear" that "section 473(b) does apply to discovery orders," *Jerry's Shell* aptly illustrates the unsettled nature of the issue.

Only *Rodriguez, supra*, 234 Cal.App.4th 715, directly addressed the applicability of the mandatory relief provision to a terminating sanction for discovery misconduct, as did an earlier case that Klimek does not cite, *Matera, supra*, 145 Cal.App.4th 44. In *Rodriguez,* the sanctions motion was "labeled a motion for dismissal as a terminating sanction" and asked the trial court to dismiss the plaintiff's action against the defendant. (*Rodriguez, supra*, 234 Cal.App.4th at p. 725.) The trial court granted the motion and ordered the complaint stricken as a discovery sanction, then entered a "JUDGMENT OF DISMISSAL AS A TERMINATING SANCTION." (*Ibid.*) On appeal, the court considered the applicability of mandatory relief as a matter of statutory interpretation, noting that section 473, subdivision (b) provides that when the requisite criteria are met, the court shall vacate "*any . . . dismissal entered* against [the at-fault attorney's] client." (*Ibid.*, italics in original.) The court concluded that the judgment dismissing the complaint constituted a "dismissal entered" for purposes of the mandatory relief

37

provision, comparing such a dismissal to a default judgment because it "was, in essence, the result of a default on discovery obligations." (*Ibid.*)

The court in *Matera* reached a similar conclusion almost ten years earlier, finding that the split of authority on the application of the mandatory relief provision to *non* default, default judgment, or dismissals was not "directly on point" because "[t]he court here actually entered defendants' defaults and a default judgment." (*Matera*, *supra*, 145 Cal.App.4th at p. 65.) *Matera* was based on the defendants' failure to comply with a discovery order and to oppose a motion for terminating sanctions striking the answer and cross-complaint, after which the trial court entered the defendants' defaults and set a prove-up hearing. (*Id.* at p. 52.) When the defendants' counsel also failed to attend that hearing, the trial court entered a default judgment in the plaintiffs' favor, at which point the defendants substituted counsel and moved for relief pursuant to section 473, subdivision (b). (*Id.* at p. 53.) The court noted the policy of construing the statute liberally in furtherance of adjudicating legal controversies on their merits and concluded that the term " 'default judgment,' in its ordinary sense," included the default judgment entered by the court. (*Id.* at pp. 66-67.)

We find *Rodriguez* and *Matera* are distinguishable based on the nature of the sanctions imposed. In *Rodriguez*, the sanction was to strike the complaint and enter a dismissal of the action. (*Rodriguez, supra*, 234 Cal.App.4th at p. 725.) In *Matera*, it was to strike the answer and cross-complaint and enter a default, followed by default judgment. (*Matera*, *supra*, 145 Cal.App.4th at p. 65.) By contrast, the discovery sanctions imposed here did not expressly include a default, a default judgment, or a dismissal.

We also need not resolve to what extent *Rodriguez* and *Matera* are consistent with the *English* line of cases, including this court's decision in *Huh*. As the court in *Matera* recognized, a discovery sanction that *in fact* forces entry of default or dismissal is different from a sanction or other litigation outcome that must be compared to a default

38

or dismissal *by analogy*.[4] Here, unlike in *Matera* and *Rodriguez*, the discovery sanctions, followed by consideration of Plaintiffs' motion in limine at trial and a confessed judgment, fall into the latter category described in *Huh* as "circumstances deemed to be procedural equivalents." (*Huh*, *supra*, 158 Cal.App.4th at p. 1415.)

We conclude that the sanctions order imposing issue, evidence, and terminating sanctions, and the resulting limited opportunity for Klimek to defend his interests at trial, was not a default, default judgment, or dismissal within the meaning of the mandatory relief provision. Thus, the trial court did not err in denying Klimek's motion for relief under section 473, subdivision (b).

### III.   DISPOSITION

The judgment is affirmed. Each side shall bear its own costs.

---

[4] *Behm v. Clear View Technologies* (2015) 241 Cal.App.4th 1 (*Behm*)—cited by Klimek during oral argument—is similarly unhelpful to Klimek's cause. Like in *Rodriguez* and *Matera*, *Behm* involved a terminating discovery sanction striking the answer and entering a default. (*Behm, supra*, 241 Cal.App.4th at p. 7.) As relevant here, the trial court in *Behm* denied the subsequent section 473(b) motion for mandatory relief from the default, finding the attorney's affidavit of fault was not credible. (*Id.* at p. 8.) A panel of this court affirmed based on the trial court's credibility determination and other support in the record. (*Id.* at pp. 15-16.) Because *Behm* does not discuss the application of a motion for mandatory relief to discovery sanctions, and in particular those that do not operate directly as a default or dismissal, we do not view it as authority for that proposition. (See *Sonic, supra*, 57 Cal.4th at p. 1160 [" 'cases are not authority for propositions not considered' "].)

_____

Márquez, J.

WE CONCUR:


_____

Rushing, P.J.


_____

Premo, J.

No. H041037
Earle & Reimer APC et al. v. Klimek